FRANK HUDGENS *et al.*, Plaintiffs-Appellees, *v.* ANTHONY T. DEAN, Defendant-Appellant.

Fifth District   No. 75-395

Opinion filed September 20, 1977.

William J. Scott, Attorney General, of Chicago (Robert G. Epsteen, Assistant Attorney General, of counsel), for appellant.

Harris and Lambert, of Marion, for appellees.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

Defendant, Anthony T. Dean, appeals from an order entered following a bench trial in the Circuit Court of Johnson County requiring him as an individual, and not in his capacity as the Director of the Illinois

Department of Conservation, together with his "agents, servants, and employees," to rebuild a road which runs through Ferne Clyffe State Park and which defendant had ordered closed to vehicular traffic, torn up and barricaded from public use. On appeal defendant raises the following issues: (1) that he is immune from individual liability since he was acting in good faith pursuant to his official duties as Director of the Department of Conservation; (2) that the instant case is in fact a suit against the State of Illinois and is therefore barred by the doctrine of sovereign immunity; (3) that the plaintiffs do not have any real property interest in the disputed road; (4) that assuming there was an easement, that easement has been extinguished; (5) that assuming an easement existed, defendant had the lawful authority to close the road to vehicular traffic; (6) that the injunctive relief granted by the trial court was clearly improper.

The pertinent facts are as follows: Ferne Clyffe State Park is a State park located in Johnson County and partly extends into the village limits of Goreville; the road in question, now known as Ferne Clyffe Road, runs in a southerly direction from the Village of Goreville into Ferne Clyffe State Park; the Village of Goreville was incorporated in 1900; although the State Park was not established until some time after 1949, the area had been used as a park and recreation area for many years prior to that by tourists and the inhabitants of Goreville; Ferne Clyffe Road existed as far back as 1908 and plaintiffs offered the testimony of numerous inhabitants of Goreville as to the constant use of that road by themselves and the general public from that time up until its closing in 1973; during the early years of its existence the road was maintained periodically by volunteer workers from the community.

Sometime between 1920 and 1935 Miss Emma Rebman acquired the land that comprised the park area and within which Ferne Clyffe Road is located. Following this transfer of ownership the public continued to maintain the road and to visit and use the park as a recreational area. In 1949 Miss Rebman conveyed her part of the park area to the State to make a State park. The State widened and paved Ferne Clyffe Road. However, due to the topography of the land, the road was always in poor condition and required continuous maintenance. In 1965 the State acquired adjoining property and built a new entrance road to the park which served to divert the traffic away from Ferne Clyffe Road.

Defendant became Director of the Department of Conservation of the State of Illinois on January 13, 1973. Prior to his becoming Director a task force comprised of various experts conducted an intensive study lasting several years of the various problems in Ferne Clyffe and other State parks and recommended to the defendant that the road which is the subject of this suit be closed to vehicular traffic. The study showed that the road itself was dangerous for automobile traffic because of the steep

grade and crooked horizontal alignment and that a satisfactory road could not be built because of the peculiar road base and topographical conditions which encouraged the rapid deterioration of the road. Furthermore, it was found that the rock, plant and soil formations in the area to which the road led were being damaged to the point of destruction from excessive use by people, automobiles, and parked trailers. The study recommended that by closing Ferne Clyffe Road and bringing people into the park by the new entrance road to a better suited area the fragile plant life which was then deteriorating could perhaps be saved.

On the basis of this report and several meetings with Department engineers and site planners, and based upon the responsibilities, purposes and powers of the Department of Conservation as set out by statute, the defendant, in his capacity as Director of the Department of Conservation, ordered that the road in question be closed to vehicular traffic. Pursuant to this order, 2700 feet of Ferne Clyffe Road was disked and the pavement scarified and removed in August of 1973. Barricades were also placed at both ends of this stretch of road.

In November of 1973 plaintiffs filed suit against the defendant individually, and not in his official capacity, seeking an injunction compelling him to rebuild and reopen the road, or in the alternative, $65,000 damages. After a trial the court held that Ferne Clyffe Road had been used openly, notoriously and adversely by the public far in excess of the 15-year statutory period for establishing a public highway by prescription and further that the long continued use by the public created an implied dedication of the road which made it a part of the street system of the Village of Goreville. Consequently, the trial court found that defendant's act of closing the road constituted an assumption of authority which he did not have and hence was an illegal act. Since illegal acts performed by defendant could not be acts of the State or of the Department of Conservation, the court held that the defendant could be proceeded against individually. Based upon these findings, the court issued a mandatory injunction ordering the defendant, "and his agents, servants and employees" to remove the barricades and to rebuild and restore Ferne Clyffe Road for public use.

We consider first the allegation that the trial court erred in holding that the instant action is not a suit against the State of Illinois nor against its Director of Conservation but is a suit against the defendant individually because we find this issue determinative of this appeal. In the trial court and now on appeal defendant argues that this action, even though brought against him as an individual, is in fact a suit against the State which is barred by the doctrine of sovereign immunity. We agree.

Article IV, section 26, of the Illinois Constitution of 1870 provided that

"[t]he State of Illinois shall never be made defendant in any court of law or equity." This section was changed by the 1970 Illinois Constitution, article XIII, section 4, which provides that: "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." Pursuant to the authority granted in the Constitution, the General Assembly enacted "An Act in relation to immunity for the State of Illinois" (Ill. Rev. Stat. 1973, ch. 127, par. 801) which provides that the State shall never be made a defendant or party in any court except as allowed in the Court of Claims Act. The latter enactment (Ill. Rev. Stat. 1973, ch. 37, par. 439.8) provides the various instances in which the State may be sued in the Court of Claims.

■■■ As discussed, the State of Illinois was not nominally made a defendant in this action. However, it is well settled that the parties formally denominated in a cause of action are not singularly conclusive as to whether a suit is barred by the doctrine of sovereign immunity. Substance takes precedence over form, and the matter must be determined by an examination of the issues presented and the relief sought. (*Moline Tool Co. v. Department of Revenue*, 410 Ill. 35, 101 N.E.2d 71; *Posinski v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 376 Ill. 346, 33 N.E.2d 869; *E.H. Swenson & Son, Inc., v. Lorenz*, 36 Ill. 2d 382, 223 N.E.2d 147; *G.H. Sternberg & Co. v. Bond*, 30 Ill. App. 3d 874, 333 N.E.2d 261; *People ex rel. Maciuba v. Cheston*, 25 Ill. App. 3d 224, 323 N.E.2d 40; *Struve v. Department of Conservation*, 14 Ill. App. 3d 1092, 303 N.E.2d 32.) The leading case establishing the rule on the question of whether a suit against an officer is in fact one against the State is *Schwing v. Miles*, 367 Ill. 436, 11 N.E.2d 944. In *Schwing* the State of Illinois had acquired legal title to land for park purposes from the holder of a tax deed. Thereafter, since the Department of Public Works and Buildings was charged by statute with the supervision and management of State parklands, the director of that department was sued by the holder of a note and trust deed of record at the time of the State's purchase, to foreclose the Department's interest in the property. In ruling that the claim against the Director was barred by the doctrine of sovereign immunity, the court held:

> "A suit brought against an officer or agency with relation to some matter in which defendant represents the State in action and liability, and the State, while not a party to the record, is the real party against which relief is sought, so that a judgment or decree for plaintiff, although nominally against the named defendant as an individual distinct from the State, could operate to control the action of the State or subject it to liability, is, in effect, a suit against the State. [Citations.] In such cases where the rights of the State would be directly and adversely affected by the judgment or

decree sought, the State is a necessary party defendant, and, if it cannot be made a party, the suit must be dismissed as to it.

\* \* \* It is thus manifest that the principal interest adverse to plaintiff in this suit is the interest of the State of Illinois in the property, and the relief sought and obtained was in reality against the State although ostensibly against one of its officers. The decree of foreclosure and sale against the Director of the Department of Public Works and Buildings is, accordingly, an effort to coerce the State by judicial order.

\* \* \*

'A suit to foreclose a mortgage involving real estate to which the State has legal title is one against the State which cannot be maintained without its consent.' " *Schwing v. Miles*, 367 Ill. 436, 442-44.

Examining these standards in light of the facts before us we consider first that the action of closing the road in question was ordered by Dean in his capacity as the Director of the Department of Conservation in furtherance of the powers and duties assigned to him by statute which included: the care, control and supervision of all State parks so that they may be used for the benefit and enjoyment of all the people of Illinois (Ill. Rev. Stat. 1973, ch. 105, par. 465); the conservation and preservation of the fauna and flora (Ill. Rev. Stat. 1973, ch. 127, par. 63a2); the preservation, through limitation of future use, areas of great natural scenic beauty (Ill. Rev. Stat. 1973, ch. 127, par. 63a19); and, the enforcement of the laws of the State and the rules and regulations of the Department in or on any lands owned, leased or managed by the Department (Ill. Rev. Stat. 1973, ch. 127, par. 63a28). We are not presented with any allegations or evidence that Dean had any personal or individual interest in the Ferne Clyffe road. Rather, the evidence shows that he received a recommendation to close the road from a task force of engineers, site planners, land managers, the district forester and district biologist, and other consultants, who, after a study of several years, found that heavy public use had damaged the plant life and the natural floor of the park in this area, that the road itself was dangerous, and that any road built over that area would deteriorate rapidly because of the existing topographical conditions.

Acting upon this report, Dean made the decision to have the road closed to vehicular traffic. Section 4(3) of "An Act in relation to \* \* \* State parks and nature preserves" (Ill. Rev. Stat. 1973, ch. 105, par. 468(3)) confers upon the Department of Conservation the power and duty to maintain roads within State parks. Section 4—201.4 of the Highway Code (Ill. Rev. Stat. 1973, ch. 121, par. 4—201.5) confers upon the Department of Transportation the power to maintain roads which lie within State

parks when consent to do so by the Department of Conservation. Pursuant to the powers and duties assigned by these statutes, the Department of Conservation entered into an agreement with the Illinois Department of Transportation to have the work performed which was required to close the road. Thus, the physical act of closing the road was accomplished by Dean's directives to State agencies and employees and was carried out by the use of State funds. As an individual Dean would have had no authority or ability to act as he did.

■■ Plaintiffs argue that Dean was not properly acting in his official capacity because the Ferne Clyffe road had become a public highway by operation of section 2—202 of the Highway Code (Ill. Rev. Stat. 1973, ch. 121, par. 2—202) which in substance provides that any road used by the public for 15 years is a public highway. The trial court found that the road had become a public highway by prescription and by a dedication of the road to public use and an acceptance by the public, both the dedication and acceptance being implied by the long, continued use of the road by the general public. While we find it unnecessary to review the findings of the trial court on this question, even assuming that the Ferne Clyffe road did in fact become a public highway, it must be noted that only an easement and not fee title can be acquired by prescription (*Ruck v. Midwest Hunting & Fishing Club*, 104 Ill. App. 2d 185, 188, 243 N.E.2d 834; *Village of Lake Bluff v. Dalitsch*, 415 Ill. 476, 114 N.E.2d 654, or by common law dedication (*Woodward v. Schultz*, 15 Ill. 2d 476, 155 N.E.2d 568). Thus, apart from the findings of the trial court as to the establishment of a public highway, it cannot be disputed that the State owns fee title to the roadway in question.

This leads us to the most important consideration in determining that this is in reality a suit against the State in light of the test set down in *Schwing v. Miles*. Here, as in *Schwing*, the relief sought and ordered operates so as to control the actions of the State and to subject it to liability. In our opinion, the mandatory injunction issued by the trial court directly and adversely affects the rights of the State. The order of the trial court is directed against the defendant as an individual and yet it orders him "his agents, servants and employees" to rebuild and reopen the road. Defendant, as an individual, lacks the legal authority to do this. As a private citizen he has no right to enter on State property, remove barricades and rebuild the road without the consent of the State. Performance of these acts by the defendant in an individual capacity could constitute a Class B misdemeanor. (See Ill. Rev. Stat. 1973, ch. 105, par. 468b(4).) Further, defendant as a private citizen has no authority to order the employees of the Departments of Conservation or Transportation to take the steps necessary to rebuild the road. Thus, if the order of the trial court is to be *lawfully* carried out, it would necessarily

involve and control the actions of the State or its agents. Moreover, the State, as holder of the legal title of the road in question, has an interest in the roadway itself and also in the preservation of the fragile areas within Ferne Clyffe State Park which would be directly and adversely affected by the reopening of the road to vehicular traffic.

Plaintiffs argue that if the road is a public highway, defendant acted wrongfully and without authority in ordering it closed. Relying upon *Joos v. Illinois National Guard*, 257 Ill. 138, 100 N.E. 505, they maintain that since the State cannot be presumed to have committed a wrongful act, the action must be taken as one against the person and not against the State. This same argument was presented to this court in *G. H. Sternberg & Co. v. Bond*, where the trial court had enjoined the Director of the Illinois Department of Transportation fron enforcing contract rights against a construction company. There, as here, the relief sought would have had the effect of binding the State. We held that the action was one against the State, other than as allowed by "An Act in relation to immunity for the State of Illinois" (Ill. Rev. Stat. 1973, ch. 127, par. 801) (Court of Claims Act) and therefore that the trial court was without jurisdiction to entertain the suit or to issue the injunction. We also note that the facts of *Joos* distinguish it from the instant case. In *Joos* plaintiff sued officers of the National Guard to enjoin them from using certain land which adjoined his property as a rifle range, because the firing constituted an obvious danger. The court held that "when the officers of the National Guard exceed their authority and by wrongful act injure another they should be, and are, answerable to the injured party in the courts." We think it important that the special facts in *Joos* show that a situation existed where the acts sought to be enjoined were not only unlawful but dangerous. (See *Struve v. Department of Conservation*, 14 Ill. App. 3d 1092, 303 N.E.2d 32, 34, where the court distinguished *Joos* on the same basis.) Moreover, in *Joos* the relief granted did not materially and adversely affect the interests of the State nor require either the expenditure of State funds or manpower as we have here.

Finally, as we held in *G. H. Sternberg & Co. v. Bond*, our holding that this is in fact a suit against the State which is barred by the doctrine of sovereign immunity does not mean that plaintiffs, if wronged, have no remedy. As we held, "It is clear that the jurisdiction of the Court of Claims is not limited to money 'claims' and that one may pursue remedies in the Court of Claims other than for the recovery of a sum of money." 30 Ill. App. 3d 874, 878, 333 N.E.2d 261, 264.

■■ For the reasons discussed herein, we hold that the trial court's order exceeds its jurisdiction since this is an action against the State which is barred by the doctrine of sovereign immunity. It is therefore unnecessary to consider the remaining issues raised on appeal.

The order of the Circuit Court of Johnson County is reversed, the injunction dissolved, and the case dismissed for want of jurisdiction.

Order reversed, injunction dissolved and case dismissed.

EBERSPACHER and KARNS, JJ., concur.